IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Trevor Reed,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   1:14cv247 (LMB/IDD)<br>) |
| United States of America,<br>    Defendant. | )<br>)<br>) |

MEMORANDUM OPINION

Trevor Reed, a federal inmate confined in the Eastern District of Virginia and proceeding pro se, has filed a civil action alleging medical malpractice pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), § 2671. Specifically, plaintiff claims that he suffered injury to his left arm on March 5, 2013, when he received a single injection containing both the flu vaccine and the pneumonia vaccine at FCC Petersburg ("Petersburg"). The matter is before the Court on the remaining defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. After careful consideration, defendant's motion will be granted, and summary judgment will be entered in its favor.

**I. Procedural History**

Plaintiff initiated this action with a Complaint filed on March 7, 2014. [Dkt. No. 1]. In an order dated March 14, 2014, plaintiff was directed either to pay the appropriate filing fee or to apply to proceed in forma pauperis. In the same order, the Court dismissed plaintiff's claims against two of the three defendants, the Federal Bureau of Prisons ("FBOP") and J. Fajardo for failure to state a claim, pursuant to 28 U.S.C. § 1915(A)(b)(1). [Dkt. No. 2]. Plaintiff paid the filing fee, and by an order dated April 9, 2014, the Complaint was deemed filed and the remaining defendant, the United States of America, was directed to respond within sixty (60)

days. [Dkt. No. 5].

On May 13, 2014, plaintiff filed a motion seeking relief in relevant part regarding a letter sent to him by the United States Attorney, requesting "a copy of the expert witness opinion certification required under Virginia Code § 8.01-20.1." In an order dated May 23, 2014, service on the defendant was quashed to allow plaintiff an opportunity to obtain an expert opinion to comply with that provision, or otherwise to provide medical records showing that he fit within its exception. [Dkt. No. 14]. On June 17, 2014, plaintiff filed a Motion in Request [sic] for Service on the Defendants to which he attached an Affidavit of Medical Opinion by Dr. Peter E. McNeil ("Dr. McNeil"). [Dkt. No. 18]. That affidavit was found "to satisfy the basic requirements of Virginia Code § 8.01-20.1," and plaintiff's request to perfect service on the defendant accordingly was granted. Dkt. No. 19].

On August 25, 2014, the United States filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment, along with a supporting memorandum and exhibits.[1] [Dkt. Nos. 25 and 26]. Plaintiff responded to this motion on September 18 and 23, 2014 [Dkt. Nos. 29 and 30] and on September 24, 2014, defendant filed a reply to plaintiff's response. [Dkt. No. 31]. It is undisputed that plaintiff has properly exhausted his administrative remedies by filing an administrative tort claim with the FBOP.[2] Accordingly, this matter is ripe for disposition.

## II. Factual Background

---

[1] Although the motion also was filed on behalf of the FBOP and J. Fajardo, both were dismissed as parties in the order of March 14, 2014. [Dkt. No. 2].

[2] In a letter dated January 15, 2014, the FBOP's general counsel informed plaintiff that his claim had been denied because "[t]here is no evidence your alleged injuries resulted from the negligence of any Bureau of Prisons staff member. You were seen by the orthopedic surgeon on April 25, 2013, who determined the problem was not related to the injection." Compl., Att. 3. As he does here, plaintiff sought an award of $10,000,000.00 in damages.

2

The following material facts are undisputed.[3] On March 5, 2013, plaintiff received both the flu vaccine "Fluzone" and the pneumonia vaccine "Pneumovax" at FCC Petersburg. Although the vaccines were stored in two separate vials, both were drawn into the same syringe and administered to plaintiff in his left arm in a single injection. Compl. ¶ 6; Def. Ex. A ¶ 10. Physician's Assistant Joseph Fajardo administered the vaccines in that manner to minimize discomfort. Def. Ex. A ¶ 7. He previously had done so with other patients and none had complained of any adverse reaction. Id.

Beginning on March 21, 2013, plaintiff returned to the Petersburg medical center on several occasions, complaining of swelling and weakness in his left arm and pain in the area of the injection site. Def. Ex. A ¶ 11; id. Att. 3, at 1-9. He was prescribed a ten-day course of Cephalexin, an antibiotic used to treat bacterial infections, placed on light duty status, and instructed to follow up as needed. Def. Ex. A, Att. 3, at 1-2. An X-ray of plaintiff's left arm was ordered on April 8, 2013, and an orthopedic consultation was prepared. He also was given a seven-day prescription for Meloxicam, which is used to relieve pain, swelling, and stiffness caused by osteoarthritis. Id. at 4-5. On April 11, 2013, plaintiff again complained of swelling in his left arm and was prescribed Prednisone for twelve days. Id. at 6-8.

On April 25, 2013, plaintiff was evaluated by Petersburg's onsite orthopedic surgeon, who "found that [plaintiff] ha[d] left arm weakness not related to the injection and recommend[ed] a Ne[u]rologist evaluation." Id. at 11. A neurological consultation was prepared and approved. Id. Plaintiff saw the Petersburg's Clinical Director on May 15, 2013, to discuss

---

[3] Plaintiff challenges some portions of defendant's recitation of the facts in his reply, but the factual issues created are not material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

treatment and the referral to a neurologist, and he was prescribed Amitriptyline for 90 days to prevent headaches. Id. at 12-13. Plaintiff's Amitriptyline prescription was increased and his light duty status was renewed on May 20, 2013. Id. at 14-15.

On June 3, 2013, plaintiff was examined by an off-site neurologist, who provisionally diagnosed him with Brachial Neuritis or Radiculitis NOS (not otherwise specified) and recommended that he undergo an electromyogram/NCS (nerve conduction study) of both his upper extremities. Id. at 18, 73-74. On June 7, 2013, plaintiff complained of continued pain in his left arm and was prescribed Gabapentin for 180 days. Id. at 16-17. Ten days later, plaintiff reported "stabbing pain" in his left shoulder and was prescribed Tylenol with codeine for seven days and Prednisone for ten days; he was also given an increased dosage of Gabapentin for 30 days.[4] Id. at 18-22. The prescription for Tylenol with codeine was renewed on June 24, July 1, and July 8 for seven days in each instance. Id. at 24, 26 - 27.

Plaintiff again visited the off-site neurologist on July 11, 2013, and also saw his primary care physician. At this time the neurologist provisionally diagnosed Cervical Root Lesions and recommended that plaintiff undergo an MRI of the cervical spine. Def. Ex. A, Att. 1 at p. 28. His Tylenol with codeine prescription was renewed for seven additional days each on July 16, July 23, and July 29, and his light duty status was renewed on August 5. Id. at 29-32. The MRI of plaintiff's cervical spine was conducted on August 15, 2013, and revealed "mild degenerative disc disease." Def. Ex. B at 3. After additional renewals of the Tylenol with codeine and Gabapentin on August 16 and August 29, the Clinical Director at Petersburg noted on September 13, 2013, that because neither the electromyogram "EMG" nor the MRI had demonstrated

---

4 There appears to be a minor discrepancy between the defendant's memorandum and plaintiff's medical records regarding plaintiff's Gabapentin prescription. The facts recited here reflect what

4

"significant findings to account for this inmate's complaints, narcotics should be stopped." Def. Ex. A, Att. 3 at 35-36, 39. Nonetheless, throughout September and October 2013, plaintiff continued to receive prescriptions for Tylenol with codeine, and he was provided with information regarding recommended exercises for his left arm and shoulder. Id. at 41-44. His light duty status continued to be extended. Id. at 37, 43.

On October 22, 2013, plaintiff had another consultation with the neurologist and was informed again that the EMG and MRI results did not reveal any pathology to explain his symptoms. Id. at 45. His prescription for Tylenol with codeine was discontinued, and he was recommended to return to normal activities. Id. On October 24, 2014, plaintiff's primary care physician instructed him to remove his sling and to follow the recommended exercises. Id. at 46. On November 15, 2013, plaintiff received a renewed prescription for Gabapentin, and on November 22 he was informed that he would be placed in Petersburg's chronic care unit. Id. at 47-51.

Plaintiff underwent another CT scan on December 16, 2013. It revealed a "small sclerotic focus," or mass, near his left humerus, but the scan as a whole did "not reveal any significant pathology that would lead to this inmate's symptoms." Id. at 53-55. Also in December 2013, plaintiff's light duty status and lower bunk pass were renewed, and he received prescriptions for Ibuprofen and Amitriptyline. Id. at 56-57. He was seen for a follow-up examination at which he stated that his arm was not improving, he was counseled on "the results of his Doppler and CT scans," and he voiced his understanding. Id. at 58-60. He further stated that he was "satisfied" with his plan of care. Id. at 59.

Plaintiff's prescription for Ibuprofen was renewed on January 17, February 10, and April

---

is shown in plaintiff's medical records, attached as Defense Exhibit A, Attachment 3.

5

25, 2014. Id. at 61-62, 69. His light duty status was renewed on February 27, March 25, and April 25, 2014. Id. at 66, 68-69. His prescription for Amitriptyline was discontinued at his request when he reported that he had suffered no headaches for a year. Id. at 67.

### III. Motion to Dismiss

Defendant argues first that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim because the affidavit of Dr. Peter McNeil supplied by plaintiff does not comply with Virginia's Medical Malpractice Act ("VMMA"). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged;" however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id. Moreover, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level... ." Twombly, 550 U.S. at 555. Finally, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 555 (internal quotation marks omitted).

Despite the preliminary observation in the order of June 18, 2014, that Dr. McNeil's affidavit appeared to satisfy the basic requirements of Virginia Code § 8.01-20.1, further analysis in light of the evidence supplied by the defendant leads to the opposite conclusion. That provision of the VMMA provides:

> Every motion for judgment, counterclaim, or third party claim in a medical malpractice action, at the time the plaintiff requests service of process upon a defendant, or requests a defendant to accept service

> of process, shall be deemed a certification that the plaintiff has obtained from an expert witness whom the plaintiff reasonably believes would qualify as an expert witness pursuant to subsection A of § 8.01-581.20 a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant for whom service of process has been requested deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed.

This provision requiring acquisition of an expert opinion applies to claims brought against the United States pursuant to the FTCA. Bond v. United States, No. 1:08cv342, 2008 WL 4774004 at *2-3 (E.D. Va. Oct. 27, 2008). Both the Fourth Circuit and this court have held on numerous occasions that failure to comply with this provision is fatal to a plaintiff's FTCA claim. See, e.g., Smith v. United States, No. 1:08cv838, 2010 WL 256595, at *2-3 (E.D. Va. Jan. 19, 2010); Bond, 2008 WL 4774004, at *2-3; Parker v. United States, 475 F. Supp. 2d 594, 596-97 (E.D.Va.), aff'd, 251 F. App'x 818 (4th Cir. 2007). That a plaintiff is a prisoner does not exempt him from obtaining the required certification. Smith 2010 WL 256595, at *3, n. 5. A narrow exception to the requirement exists only if the medical malpractice alleged lies within the "range of the jury's common knowledge and experience." Va. Code § 8.01-20.1. That exception does not apply here.

In its entirety, the affidavit plaintiff has provided in an attempt to satisfy the certification requirement states:

> I, Peter E. McNeil MD do affirm that:
>
> The above patient, Trevor Reed received a combination immunization in the past and had symptoms consistent with reflex sympathetic dystrophy as a result. This was discussed informally with an independent consultant as well as a review of pictures at Geisinger Medical Center.

7

> That the CDC and Merck and Company and IMC instructions for providing the Pneumovax 23 vaccine, the influenza and pneumonia vaccine should be administered separately for the safety of the patient.
>
> That unknown adverse reactions including serious injury or the loss of function in the arm injected could possibly come from mixing the above vaccines in the same syringe and injecting a patient with the unauthorized combination.
>
> 6-3-14                                   /s/ Peter E. McNeil MD
> Date

When this affidavit is analyzed in the context of the statutory requirements, it plainly falls short. It is clear that Dr. McNeil, whose letterhead includes a Pennsylvania address, did not meet or speak with plaintiff in forming his opinion. Rather, it appears that he based his opinion upon an "informal discussion" with an unidentified independent consultant and a review of "pictures."[5] Dr. McNeil's affidavit only relates his understanding that plaintiff received a single injection of both the flu and pneumonia vaccines; he says nothing whatever about the extensive array of medical examinations and tests plaintiff underwent in 2013, which occurred before he wrote his affidavit. That Dr. McNeil "was Reed's doctor from birth through his early 20's," Pl.'s Reply 4, does not alter the conclusion that he expresses no insight whatever into the full panoply of facts pertinent to plaintiff's injury. For these reasons the affidavit does not reflect that Dr. McNeil had a "reasonable understanding of the facts," as required by § 8.01-20.1. Moreover, Dr. McNeil does not opine that the combined injection plaintiff received "deviated from the applicable standard of care." Indeed, he never articulates the nature of the standard of care at all. Perhaps most tellingly, Dr. McNeil does not state that the injection was "a proximate cause of the

---

[5] According to plaintiff, Dr. McNeil was provided with and examined a photograph of plaintiff's arm. Pl's Reply at 4; id., Ex. 1.

8

injuries" plaintiff alleges; instead, he merely speculates that plaintiff's injury "could possibly [have] come from" the injection. Far from establishing any causal relationship between the injection of the vaccines and plaintiff's problems with his arm, the affidavit does no more than posit a "sheer possibility" that one occurrence flowed from the other. Because "a sheer possibility that the defendant has acted unlawfully" is insufficient to survive a motion to dismiss under Rule 12(b)(6), Twombly, 550 U.S. at 570, defendant's position that the Complaint should be dismissed for plaintiff's failure to comply with Va. Code § 8.01-20.1 is well taken, and the defendant's Motion to Dismiss will be granted.

### IV. Motion for Summary Judgment

Even if the Complaint were not dismissed, it is equally apparent at this juncture that the defendant is entitled to summary judgment. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that summary judgment is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary

9

judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

The extent of the limited liability provided by the FTCA's waiver of the United States' sovereign immunity is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2674. As it is undisputed that plaintiff received the injection upon which he predicates his claim at FCC Petersburg, Virginia law is applicable. See Starns v. United States, 923 F.2d 34, 37 (4th Cir. 1991). Under Virginia law, "a plaintiff suing for medical malpractice must demonstrate (1) the applicable standard of care, (2) a breach of that standard of care, and (3) that this breach proximately caused plaintiff's injuries." Campbell v. United States, 470 F. App'x 153, 158 (4th Cir. 2012). In this case, plaintiff has failed to meet any of these requirements.

Pursuant to Va. Code § 8.01-581.20, "the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty" in Virginia. To demonstrate a breach of this duty, the plaintiff must establish that a reasonably prudent medical practitioner would not have combined Fluzone and Pneumovax in a single injection. Joseph Fajardo, the physician's assistant who administered the injection to plaintiff, attests that he did so only after reading the full "insert packet" provided with both vaccines. Def. Ex. A ¶¶ 4-5. He explains that vaccines often also

come with "Highlights of Prescribing Information," which contain excerpts from the full insert packet. Id. In this instance, the information provided in those sources appears to be somewhat contradictory. Fajardo points out accurately that the full insert packet for Fluzone and Pneumovax do not list the other as a possible contraindication. Id. ¶¶ 5-6; id., Att. 1; however, as plaintiff points out in his reply, the packet insert for Pneumovax explicitly states under Section 2.1, Preparation, "Do not mix PNEUMOVAX 23 with other vaccines in the same syringe or vial." Id., Att. 1, at 3. In addition, the "Highlights of Prescribing Information" for Fluzone states, "Fluzone should not be ... mixed with any other vaccine." Id., at 8.

The fact that the insert packet provided with Fluzone and Pneumovax contained the foregoing warnings does not constitute prima facie evidence that their simultaneous administration breached the standard of care. Courts recognize that the judgment as to whether to give a drug to a patient is so individualized that the information included in FDA-approved package inserts and in the Physician's Desk Reference, while relevant and useful, does not provide the sole determinant of the standard of care. Bryant v. King's Daughter Med. Ctr., No. Civ. A. 11-36-E BA, 2013 WL 186927, at *11 (E.D. Ky. 2013) (citing Hyman & Armstrong, P.S.C. v. Gunderson, 279 S.W.3d 93, 114 (Ky. 2008)); see also, Walton v. United States, 770 F. Supp. 731, 739 (D. Mass. 1991) (noting in an action pursuant to the FTCA that the manufacturer's package insert concerning the administration of a drug did not establish a breach of the duty of care where patient received the drug and died). That is particularly true here, where physician's assistant Fajardo attests that in administering both Fluzone and Pneumovax to plaintiff, he relied on the portions of the package inserts that stated that the two drugs were not contraindicated. Under these circumstances, plaintiff has failed to carry his burden to

demonstrate that the applicable standard of care was breached by the injection he received.

Moreover, even if the administration of the two vaccines in the same syringe were deemed to have breached the standard of care and therefore to have been negligent, plaintiff has failed to demonstrate that the injection was the proximate cause of his injury. The Fourth Circuit holds that "in malpractice cases, proof of causal connection must be something more than consistent with the plaintiff's theory of how the claimed injury was caused.... Proof of causation cannot rest on conjecture, and the mere possibility of such causation is not enough to sustain the plaintiff's burden of proof." Fitzgerald v. Manning, 679 F.2d 341, 349 (4th Cir. 1982). Instead, to prevail in a medical malpractice case in Virginia, a plaintiff must "sustain the burden of showing that the negligent acts constituted a proximate cause of the injury or death." Parker, 475 F. Supp. 2d at 598. In determining whether a plaintiff has met this burden, Virginia courts apply a "but for" rule: "Where there are a number of possible causes for a plaintiff's disability, the physician's negligence will be regarded as the proximate cause only if the evidence is that it is 'more likely' or 'probable' that his negligence was such cause than the other possible causes." Fitzgerald, 679 F.2d at 348. Accordingly, a plaintiff's evidence must demonstrate, to a "'reasonable degree of medical certainty,' that it was more likely that a defendant's negligence was the cause." Id. at 350. Importantly, this burden is not met where the plaintiff can show only a possibility that the injury was caused by the physician's negligence. Id. at 349.

Here, plaintiff has come forward with nothing to satisfy his burden to show to a reasonable degree of medical certainty that the combined vaccine injection administered by FBOP staff caused the injury to his arm. Indeed, all of the uncontradicted medical evidence discussed above indicates to the contrary. In April, 2013, the Petersburg orthopedist who

examined plaintiff concluded that plaintiff suffered from "left arm weakness, unrelated to [the] injection" and recommended neurology consultation. Def. Ex. A, Att. 3 at 11. In June 2013, the neurologist diagnosed plaintiff's condition as "left brachiopathy," or damage to the nerve roots of the arm stemming from the spinal cord. Id. at 18. In July 2013, after another visit to the neurologist, plaintiff's diagnosis was updated to "cervical root lesions," or pain stemming from a lesion in his cervical area that caused his spine to compress. Id. at 28. At a third visit in October 2013, the neurologist noted that EMG and MRI test results "did not demonstrate any pathology to explain [plaintiff's] symptoms. He is neurologically intact and young and therefore should make a full recovery." Id. at 45. After a CT scan of plaintiff's left shoulder in December 2013, a "small sclerotic focus," or mass, was noted on his humerus, but it was concluded that the "CT scan and US [ultrasound] do not reveal any significant pathology that would lead to this inmate's symptoms." Id. at 54-55. Plaintiff was referred to physical therapy that same month, with the notation that "inmate reports weakness to his upper left extremity. MRI, CT, US and EMG do not demonstrate any etiology for his symptoms." Id. at 55.

The sole evidence plaintiff has provided to demonstrate that the injection of the vaccines proximately resulted in the pain and weakness in his left arm are two affidavits. The first was the affidavit of Dr. McNeil initially submitted to satisfy the expert witness certification required by Va. Code § 8.01-20.1. In his reply to defendant's Motion to Dismiss or, the Alternative, Motion for Summary Judgment, plaintiff again refers to that affidavit arguing that it demonstrates proximate cause by virtue of "Dr. McNeil's strong conclusion that these symptoms are 'as a result' of the 'combination immunization.'" Pl's. Reply 6. As discussed above, plaintiff's characterization of the affidavit is inaccurate. In fact, Dr. McNeil did not express a "strong

opinion" regarding causation of plaintiff's reported symptoms; rather, he only speculated that the injury "could possibly [have] come from" the injection. Such speculation falls short of demonstrating to a reasonable degree of medical certainty that the combined vaccine injection administered by FBOP staff proximately caused the injury to plaintiff's arm. Cf. Fitzgerald, 679 F.2d at 350.

The second purported affidavit plaintiff has submitted fares no better. First, although captioned as an "affidavit," it was not signed under penalty of perjury. In its entirety, it states:

> Affidavit of Medical Experience
>
> We, Karen Radel and Cheryl Kofskie RNs know from personal experience that a combination of medications or vaccines should never be mixed without the manufactures [sic] directions.
>
> Furthermore, the CDC, Merck and Company (manufacture) and IMC instructions for providing the Pneumovax 23 vaccine, the influenza and pneumonia vaccine should be administered separately for the safety of the patient.
>
> Unknown adverse reactions including serious injury or loss of function in the arm injected could possibly come from mixing the above vaccines in the same syringe and injecting the patient with the unauthorized combination.
>
> Date June 9, 2014                      /s/ Karen Radel RN
>
>                                         /s/ Cheryl Kofskie RN

Pl.'s Reply, Ex. 7.

As with Dr. McNeil's affidavit, neither affiant states her conclusion to a reasonable degree of medical certainty. Cf. Fitzgerald, 679 F.2d at 350. Even if the affiants had made such a certification, there is no indication aside from their use of the title "RN" that the affiants are qualified to provide medical opinions, nor do they indicate that they have examined or even met

14

the plaintiff. Under Fed. R. Civ. P. 56(c)(4), any affidavit provided in support or opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The nurses' affidavit plainly fails the first and third of these criteria and is so lacking in detail that it is impossible to assess the second. Under these circumstances, the two affidavits supplied by plaintiff, both alone and together, do not suffice to establish to a reasonable degree of medical certainty that the vaccine injection proximately caused the injury to his arm. Cf. Fitzgerald, 679 F.2d at 350.

Lastly, plaintiff asserts in his reply that the defendant "eludes the findings of a specialist that is [sic] critical in this case." Pl.'s Reply 6-7. Plaintiff points to the report of a physical therapy consultation on May 20, 2014, and argues that the symptoms described there, such as shaking, decreased range of motion, and weakness, closely match those described on the website of New York State Department of Health as indicating reflex sympathetic dystrophy. Plaintiff asserts that the New York website also states that "there is no cure" and "early diagnosis is key."

Examination of the physical therapy report does not provide the support plaintiff needs. The report was prepared at Rehabilitation Services in Hopewell, Virginia, by a physical therapist named Kim Williams and signed by a physician whose name is illegible. On the first page of the report, the therapist reports in plaintiff's medical history his receiving a vaccination for flu and pneumonia and then experiencing edema in his upper left arm and "generalized illness" two hours after receiving the shot. Pl.'s. Reply, Ex. 11-1. The history also reports that plaintiff experienced pain when he tried to use the arm, "shakes," numbness in his fingertips, and diminished sensation in his hand. Id. Under "occupational/functional limitations," plaintiff

15

reported not being able to lift or grip, to button or tie his shoes, or to carry objects, and he stated that he had difficulty showering. Id. Plaintiff was recorded as stating as his goal: "My arm wouldn't shake, I would be able to type, carry & lift things." Id. Under "observation/inspection," the therapist wrote: "Avg build young [male] [with] (L) UA hanging @ his side - discolored, mottled skin, cool to touch, (L) pec. area [with] redness." Id. She recorded a primary diagnosis of "left upper arm weakness," id.; however, on the second page of the report, under "assessment," the therapist stated: "P[atient's] symptoms/subjective complaints inconsistent [with] objective findings. No evidence of muscle wasting & only mild deficits in accessory motion." Pl.'s Reply, Ex. 11-2. To the extent that plaintiff relies on the subjective complaints recorded by the therapist to bolster his contention that the injection caused reflex sympathetic dystrophy, his position is undermined by the therapist's observation in the same report that his subjective complaints were inconsistent with her observations and that in fact she saw no signs of muscle wasting and only a "mild deficit" in his range of motion. In addition, although plaintiff's subjective complaints recorded by the therapist include the onset of edema in his arm and "generalized illness" two hours after receiving the injection on March 5, 2013, the medical records establish that his first visit to the Petersburg medical center regarding problems with the arm did not occur until March 21, 2013, over two weeks later. Def. Ex. A ¶ 11.

In sum, no issues of material fact preclude summary disposition of this action. As plaintiff has failed to carry his burden to show either that the injection he received was negligently administered or that, to a reasonable degree of medical certainty, the injection was the proximate cause of the injury to his arm, defendant is also entitled to summary judgment on plaintiff's medical malpractice claim.

## V. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be granted, plaintiff's claim will be dismissed for his failure to comply with Va. Code § 8.01-20.1, and judgment will be entered in favor of the defendant by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 25th day of March 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge